**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Gary STELLA, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Charles HATFIELD, Defendant-Appellant.**

**Nos. 71–1061, 71–1128.**

United States Court of Appeals,
Ninth Circuit.

Sept. 16, 1971.

---

12. *Cf.* Blakeman v. City of Wichita, 93 Kan. 444, 144 P. 816 (1914).

13. City of Iola v. Birnbaum, 71 Kan. 600, 81 P. 198 (1905).

Bernard L. November, Santa Ana, Cal., for appellant Stella.

Richard T. Sykes, Richard G. Sherman, Encino, Cal., for appellant Hatfield.

Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., Robert P. Scheinblum, Gregory Fischbach, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before DUNIWAY, WRIGHT and CHOY, Circuit Judges.

DUNIWAY, Circuit Judge:

Co-defendants Stella and Hatfield appeal from judgments of conviction under the National Firearms Act. Stella received concurrent sentences on two counts of being an unregistered dealer in firearms, 26 U.S.C. § 5861(a), three counts of possessing unregistered firearms, § 5861(d), and one count of carrying a firearm during the commission of a felony, 18 U.S.C. § 924(c) (2). Hatfield was convicted on one count of possessing an unregistered firearm. We affirm.

Antonio Amezquinta, a government informer, received a telephone call from defendant Stella who "stated that he understood [Amezquinta] was interested in the purchase of some automatic weapons." A meeting between Amezquinta and Stella was held the next night and, after Stella agreed to sell various-caliber machine guns and ammunition, Stella led Amezquinta to Hatfield's house. Hatfield and Stella took the firearms from Hatfield's back yard, where they were stored, and loaded them into Amezquinta's car. This transaction forms the basis for one dealing and one possession count against Stella, and the one posses-

**524**

sion count against Hatfield. We deem it unnecessary to discuss the later events which are the basis for the remaining counts against Stella.

■ Stella's defense was entrapment. He testified that he did not want to sell the guns but was induced to do so by Amezquinta. Hatfield claimed that he did not "possess" the guns because he was simply storing them in his back yard for Stella. Our review of the record, considered in the light most favorable to the government, convinces us that the evidence was sufficient to justify the jury's conclusion that Stella was not entrapped and that Hatfield had knowing possession of the items and knowledge that the items possessed were firearms. Hatfield's statement that he had more "goodies" to sell Amezquinta, together with his active participation in the loading of the guns into the car, supply an adequate basis for the jury's conclusion that he had the requisite knowledge and dominion and control. Knowing possession is all that is required. United States v. Freed, 1971, 401 U.S. 601, 607–610, 91 S.Ct. 1112, 28 L.Ed.2d 356.

■ Stella argues that the court erred in various evidentiary rulings. He first says that the court unduly restricted his cross-examination of Amezquinta for bias. However, immediately after the restrictive ruling, Stella's counsel was permitted fully to cross examine Amezquinta as to his relationship with the government. Stella's other arguments relate to proof of "state of mind" to support his entrapment defense and impeachment of a government witness who testified to arranging the initial contact between Stella and Amezquinta. All of this testimony and the defense of entrapment related solely to the dealer counts. Stella admitted possession of the guns and received concurrent sentences on the dealer and possession counts. We need not consider the allegedly erroneous rulings; they do not affect the conviction on the possession counts. United States v. Jack, 1971, 9 Cir., 439 F.2d 879.

■■ Hatfield presents a multitude of arguments, the most serious of which concerns an interpretation of the National Firearms Act. He argues that he could not "possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record," § 5861(d), without first having had the firearm "transferred" to him as that term is defined in the Act, which defines a "transfer" as including "selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of." § 5845(j). Hatfield urges that a transfer for bailment does not fit within that definition. We need not consider the latter contention because Hatfield's major premise—that a "transfer" is necessary before one can be convicted of unlawful possession—is erroneous. Subsection (b) of § 5861 makes it unlawful to "receive or possess a firearm transferred * * * in violation of the provisions of this chapter." Subsection (d) under which Hatfield was convicted, was added to make unlawful all forms of unregistered possession.

■ We have considered each of Hatfield's other arguments and find each to be without merit. His counsel's posttrial ruminations have led him to argue that his trial representation of Hatfield was incompetent because he failed to ask for a severance. No doubt every trial lawyer who has lost a case can, when he holds his own mental post mortem, find some act of omission or commission that he regrets. The Book of Common Prayer has us confess: "We have left undone those things which we ought to have done, and we have done those things which we ought not to have done, and there is no health in us." Regret does not mean that counsel's representation of his client was incompetent. Posttrial hindsight, induced by regret, may be worse, not better than pre-trial foresight. We find no incompetence here.

Affirmed.