**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James STEVENS, Defendant-Appellant.**

**No. 77–2064.**

United States Court of Appeals, Tenth Circuit.

Submitted March 13, 1979.

Decided April 2, 1979.

John M. Wells, Ruud & Wells, Albuquerque, N. M., for defendant-appellant.

Victor R. Ortega, U. S. Atty., and David N. Williams, Asst. U. S. Atty., Albuquerque, N. M., for plaintiff-appellee.

Before SETH, Chief Judge, HOLLO-WAY, Circuit Judge, and MARKEY,* Chief Judge.

MARKEY, Chief Judge.

Appeal from decisions of the United States District Court for the District of New Mexico, denying appellant's motions to exclude evidence. We affirm.

### Fact Background

Informed that a man at the Hi-Way Host Motel in Albuquerque possessed a shotgun and had threatened to kill somebody, Detectives Salazar and Pollo of the Albuquerque Police Department went to Stevens' room and knocked, identifying themselves when Stevens opened the door. Stevens, who was undressed, invited them in.

The detectives, after telling Stevens that they were there to learn whether he had a shotgun and had threatened to kill somebody, asked "if it's all right to look around for the shotgun." Stevens told them to "go ahead," later testifying that he did so because they had already started to search. He did not tell the detectives to go away, or not to come in, and did not indicate in any way that he did not want them in his room. Salazar, noting a suitcase, asked if he could look inside. In their testimony, the detectives said Stevens agreed before Salazar opened the suitcase, and Stevens said Salazar asked to look inside only "after he flipped it up." Salazar found a shotgun under several clothing articles. After calling the National Crime Information Center to determine the status of the gun, the detectives took it, leaving Stevens in the room. Stevens was later arrested.

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. § 5861. Prohibited acts
   It shall be unlawful for any person—
   (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . .

### Procedural Background

Indicted on one count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d)[1] and 5871,[2] Stevens pleaded not guilty.

Prior to trial, Stevens moved to suppress the shotgun, arguing that its seizure violated the Fourth Amendment, i. e., that he had not consented to the search. At a hearing, the government acknowledged the absence of a warrant, and relied on Stevens' consent. The detectives and Stevens testified as above stated. The district judge, after specifically finding that Stevens had knowingly and voluntarily given his consent, and that the detectives were credible witnesses, denied the motion.

At trial, before the first witness was called, Stevens moved to exclude, on grounds of relevancy and prejudice, a box of shotgun shells seized with the gun. That motion was denied. Renewed when the prosecution tendered the shells as exhibits, it was again denied.

The jury returned a verdict of guilty.

### Issues

The issues are whether the district court erred in failing to exclude (1) the gun, and (2) the shells.

### OPINION

1. *The district court did not err in failing to exclude the gun.*

   ■ Stevens alleges that: (a) because of his youth and deficient education, he was unaware he could resist the detectives' entry into and search of his room; (b) he was never advised of his right to refuse search nor asked to read or sign any consent; (c) the strict standard of waiver of constitu-

2. § 5871. Penalties
   Any person who violates or fails to comply with any provisions of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both, and shall become eligible for parole as the Board of Parole shall determine.

tional rights applies; and (d) the government failed to sustain its burden of showing, by clear and positive testimony, "that consent was unequivocal and specific and freely and intelligently given."

The leading case on the meaning of consent in the context of a search is *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There, the Court: (a) expressly rejected the proposition that the government must prove "that the subject of the search knew that he had a right to refuse consent . . . ," *id.* at 229, 93 S.Ct. at 2049; (b) expressly rejected the notion that the subject must be advised of his right to refuse, *id.* at 231, 93 S.Ct. 2041; (c) found that the strict waiver standard applicable to rights guaranteeing a fair criminal trial are inapplicable to those guaranteed under the Fourth Amendment, *id.* at 241, 93 S.Ct. 2041; and (d) set forth this test, *id.* at 248–49, 93 S.Ct. at 2059:

> [W]hen the subject of a search is not in custody and the [government] attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. [Footnote omitted.]

The district judge found, after an evidentiary hearing, that Stevens' consent was given voluntarily, and Stevens has not persuaded us that the judge departed from the test in *Schneckloth* or that his finding was clearly erroneous. *Villano v. United States*, 310 F.2d 680, 684 (10th Cir. 1962)

The cases cited by Stevens are distinguishable. In *United States v. Rodriguez*, 525 F.2d 1313 (10th Cir. 1975), Rodriguez, who spoke little English, complied with the orders of uniformed, armed, border patrol agents to identify his luggage and open it for inspection. That search involved acquiescence in a claim of lawful authority, not consent. In *Villano, supra,* police awakened Villano before dawn, took him into custody, and indicated that they would search whether or not he cooperated. That search involved custody, express coercion and disregard of Villano's protests, precluding a finding of consent.

2. *The district court did not err in admitting the shotgun shells.*

Stevens alleges that the shells were irrelevant to the crime charged and immaterial to proof of its elements, and that their admission was prejudicial because they might have led the jury to infer his involvement in other unlawful activities.

■ The government had to prove that Stevens' possession of the shotgun was knowing. *United States v. Stella*, 448 F.2d 522, 524 (9th Cir. 1971). The shells were found in the same room as the illegal shotgun and were the type designed to be fired by it. The shotgun, when seized, was loaded with that type of shell. Existence of the knowledge element is made more probable by the evidence of the shells than it would be if there had been no shells. The shells therefore fell within the F.R.Ev. 401 definition of relevant evidence.[3]

■ Any prejudice to Stevens was purely speculative. If any prejudice arose it would have been remedied by the judge's instruction to the jury:

> Now, the Defendant is not on trial before you for any act other than that charged in the Indictment. Specifically, the evidence as to the shotgun shells was admitted solely as it might be probative in your

3. Rule 401.

DEFINITION OF "RELEVANT EVIDENCE"

"Relevant evidence" means evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

minds on the issues of knowledge or absence of mistake or accident. The Defendant is not on trial before you on any charge relating to the possession of the shells, and any evidence regarding them is strictly limited in your consideration to the issues as to which I have just instructed you.

Finding no error, we *affirm* the judgment.