**UNITED STATES of America, Plaintiff,**

v.

**Alejandro Garcia IBARRA, Defendant.**

**No. CR89–0025J.**

United States District Court, D. Wyoming.

Jan. 3, 1990.

Lisa Leschuck, Asst. U.S. Atty., D. Wyoming, Cheyenne, Wyoming, for plaintiff.

Steven Michael Kissinger, Cheyenne, Wyo., for defendant.

**ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION**

ALAN B. JOHNSON, District Judge.

THE ABOVE CAPTIONED MATTER came before the court on December 27, 1989, for hearing on the government's motion for reconsideration of this court's November 15, 1989, memorandum opinion and order granting the defendant's May 10, 1989, motion to suppress evidence. The defendant, Alejandro Garcia Ibarra, is charged in a one count indictment with possession of cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). On September 12,

1989, the case came before the court for an evidentiary hearing on the defendant's motion to suppress, which the court granted after carefully considering the arguments of counsel for the government and the defendant in light of the evidence presented.

The court will not recite in detail the facts of this case because they are already found in its November 15, 1989, memorandum opinion and order, *United States v. Ibarra*, 725 F.Supp. 1195 (D.Wyo.1989). On March 24, 1989, Ibarra and a friend were traveling at a lawful rate of speed in a 1981 Oldsmobile Cutlass with California plates east through southern Wyoming on Interstate 80 (I–80). At that time, Wyoming highway patrolman Scott Mahaffey noticed the car because its driver, Ibarra, appeared to be driving slightly below the speed limit. After following the vehicle for approximately five miles, Mahaffey stopped Ibarra because he noticed that Ibarra "weaved," and abruptly passed two other vehicles without signaling.

After informing Ibarra why he stopped him, Mahaffey discovered that Ibarra's driver's license had been suspended for failure to pay a reissue fee and that Ibarra had recently purchased the vehicle from a Mr. Charles J. Petrocchi. Ibarra was issued a citation for the license problem for which he posted a $220–appearance bond. Meanwhile, a second Wyoming highway patrolman, Gregory Leazenby, arrived on the scene and sat in the back of Mahaffey's patrol car and observed the interchange between Mahaffey and Ibarra. Ibarra, who is from Mexico and evidently speaks halting English,[1] aroused Mahaffey's suspicions by giving conflicting answers about his itinerary.

His suspicions aroused, Mahaffey asked Ibarra three questions, which appear to have become routine among Wyoming highway patrolmen. He asked if the vehicle contained any "weapons, large amounts of money, or controlled substances" to which Ibarra replied "no." Mahaffey then obtained Ibarra's permission to look in the trunk, the search of which revealed nothing illegal. When it was discovered that Ibarra's friend also had an expired driver's license, Mahaffey, without consulting with Ibarra, radioed for a wrecker to tow the vehicle into Laramie, which was a short distance away. In its prior order, the court found that this was done without lawful authority and was motivated by an investigatory motive, rendering any inventory search unreasonable under the fourth amendment. *Ibarra*, 725 F.Supp. at 1202 and 1204.

The officers then separated Ibarra and his friend and drove them in their respective patrol cars to a motel in Laramie. Immediately after leaving them there, the officers proceeded to the place where Ibarra's vehicle had been towed and, believing they still had his consent, searched the vehicle again. The search revealed approximately one kilogram of cocaine for which Ibarra was later indicted by a federal grand jury.

In its original opposition to the defendant's motion to suppress, the government argued that the second warrantless search was valid under a continuing consent theory. *See* United States' Supplemental Memorandum In Support of Proposed Findings of Fact And Conclusions of Law at 1. Prior to the suppression hearing, however, the government abandoned the theory of continuing consent, stating that "[c]ontrary to its prior-stated position, the United States no longer argues that the second search of the Defendant's vehicle is supportable on the basis of continuing consent. Additional research has failed to provide legal support for this position, and the argument is conceded." United States Supplemental Memorandum In Support of Proposed Findings of Fact And Conclusions of Law at 1. Thus, at the suppression hearing held on September 12, no evidence was presented on this issue and the court decided the motion on the issues whether the search was a valid inventory search or whether the search was valid under the "inevitable

---

1. At the suppression hearing, Ibarra was assisted by a court appointed interpreter in understanding the proceedings.

discovery" doctrine. The court also decided the issue whether the stop of Ibarra's vehicle was a pretext to investigate more serious unrelated crime for which the officer had neither probable cause nor reasonable suspicion to justify a detention. Although it resolved the pretext issue in favor of the government, the court found that the issue presented a close call.

The title of the government's motion is a misnomer because it now asks the court to "reconsider" an issue that was never considered by the court. Instead, the government is asking the court to decide a new issue for which no record was specifically developed.[2] The court decided the motion to suppress on issues for which an adequate factual basis was developed during a long evidentiary hearing. The court issued its ruling only after carefully considering the evidence presented.

■ The government now argues that it has found caselaw that supports a "continuing consent" theory. The government has the burden of proving that Ibarra freely and voluntarily consented to a warrantless search of his vehicle. *United States v. Recalde*, 761 F.2d 1448, 1453 (10th Cir. 1985). The government, of course, must present "clear and positive testimony that the consent was unequivocal and specific ... [and] establish that the consent was given without duress or coercion." *Id.* Because a warrantless search conducted pursuant to a "continuing consent" is an exception to the fourth amendment's warrant requirement, the government likewise must prove that Ibarra in fact gave a "continuing consent" to the officers' second search of his vehicle. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (government has burden of showing that a search comes within one of the exceptions to the fourth amendment's warrant requirement).

The court must view the evidence presented with a presumption that the defendant did not waive his constitutional right to be free from an unreasonable warrantless search. *Villano v. United States*, 310 F.2d 680, 684 (10th Cir.1962).

In support of its theory, the government relies principally on the following cases: *United States v. White*, 617 F.2d 1131 (5th Cir.1980); *Phillips v. State*, 625 P.2d 816 (Alaska 1980); *Ferguson v. Caldwell*, 233 Ga. 887, 213 S.E.2d 855 (1975); *State v. Luther*, 63 Or.App. 86, 663 P.2d 1261 (1983); *Gray v. State*, 441 A.2d 209 (Del. Super.Ct.1982); *People v. Trujillo*, 40 Colo. App. 186, 576 P.2d 179 (1977); and *People v. Nawrocki*, 6 Mich.App. 46, 148 N.W.2d 211 (1967). In reviewing those cases, the court finds that in none of them did the defendant ever withdraw his consent to search. Nor did the courts in those cases find an unlawful seizure of the object searched.

At the September 12 suppression hearing, the evidence showed that Ibarra closed and locked the trunk upon the conclusion of the officer's first warrantless search. At some point the officers decided to impound the vehicle to conduct a second investigatory search of it. They never informed Ibarra that a second warrantless investigatory search would be conducted. The court finds that "[t]he act of locking the [trunk] effectively revoked the [defendant's] consent to any future searches" of his vehicle. *Cooper v. State*, 480 So.2d 8, 11 (Ala.Crim. App.1985). This rule is in harmony with the general principle that "except in unusual circumstances, it would seem that a consent to search may be said to be conducted forthwith and that only a single search will be made." 3 La Fave, Search and Seizure, § 8.1(c), at 170 (2d ed. 1987). The government must show that by closing

---

**2.** Whether the motion is in fact one for reconsideration is relevant for purposes of appeal in this case. A motion for reconsideration in a criminal case tolls the 30 days in which the government may file its notice of appeal, provided such a motion is in fact one for reconsideration and filed within the 30–day period. *See, e.g., United States v. Kalinowski*, 890 F.2d 878

(7th Cir.1989) (citing *United States v. Healy*, 376 U.S. 75, 77–80, 84 S.Ct. 553, 555, 11 L.Ed.2d 527 (1964)). *See also United States v. Marsh*, 700 F.2d 1322 (10th Cir.1983) (motion for reconsideration of trial court's order denying new trial did not toll time in which to file notice of appeal).

and locking the trunk, Ibarra did not revoke his consent to additional searches.

In attempting to discharge this burden, the government merely argues that Ibarra's act of locking the trunk did not constitute a revocation of consent because the officers subsequently gained possession of the keys to the vehicle. The government's argument, however, overlooks the fact that the officers gained possession of the keys after Ibarra closed and locked the trunk. Further, their gaining possession of the keys was incident to an unlawful seizure of Ibarra's vehicle, thereby making it difficult if not impossible to conclude that such an act constituted a specific and unequivocal second consent to a later search of which Ibarra was never informed would in fact occur. The issue of unlawful seizure, that is, a fourth amendment violation, was, of course, nonexistent in the cases cited to the court by the government. Even assuming Ibarra did not revoke his consent by closing and locking the trunk, the court finds that any "continuing consent" became infected by a fourth amendment violation, the seizure of Ibarra's vehicle for the purpose of conducting an investigative search.

■ "The fourth amendment protects 'effects' as well as people from unreasonable searches and seizures." *United States v. Place,* 462 U.S. 696, 716, 103 S.Ct. 2637, 2649, 77 L.Ed.2d 110 (1983) (Brennan, J., concurring). Under the fourth amendment, law enforcement officers may seize one's personal property and briefly detain it for investigative purposes where there exists a minimum level of objective justification based on "reasonable, articulable suspicion" to believe it contains contraband or evidence of a crime. *Id.* at 706, 103 S.Ct. at 2644. *See also United States v. Bell,* 892 F.2d 959 (10th Cir.1989) (seizure of personalty justified under the fourth amendment where police have "'reasonable, articulable suspicion, premised on objective facts'" that it contains contraband or evidence of a crime). Absent valid consent to search, the court generally must suppress evidence obtained as a result of an unlawful seizure of personalty such as luggage or in this case the defendant's

automobile. *Place,* 462 U.S. at 710, 103 S.Ct. at 2646.

At the hearing, it was revealed under questioning by the court that the officers had the vehicle towed so that they could search it in a more secure location. *See Ibarra,* 725 F.Supp. at 1204. Although they had consent to conduct the first search on the highway, they at no time obtained Ibarra's consent to seize his vehicle. The evidence showed that Ibarra was informed that the vehicle was to be impounded after officer Mahaffey radioed for a tow truck, which occurred after Ibarra had locked the trunk and before the officers gained possession of the keys. Ibarra was never given an option to provide for the disposition of his car. Instead, the officers seized it without Ibarra's permission for the purpose of conducting a second investigatory search for contraband. A seizure for this purpose could be justified on nothing less than probable cause. *See, e.g., Place,* 462 U.S. at 706, 103 S.Ct. at 2644 (if purpose of seizure is to search, it must be based on probable cause). At the hearing, however, the government did not even present evidence that the officers had a reasonable, articulable suspicion that the car contained illegal drugs, much less probable cause. In any event, reasonable suspicion under *Terry* would have been insufficient to justify a seizure and subsequent warrantless investigatory search of the vehicle. Thus the seizure of the vehicle was unlawful under the fourth amendment.

■ Where a consent is tainted by a fourth amendment violation, the court must determine whether the consent, under the totality of the circumstances, "was sufficiently an act of free will to purge the primary taint of the" prior police misconduct. *United States v. Maez,* 872 F.2d 1444, 1454 (10th Cir.1989). When it is obtained after a fourth amendment violation "there must be a break in the causal connection between the illegality and the evidence thereby obtained." *Id.* In determining this issue the court looks to the following factors: "[t]he temporal proximity of the ... [prior police misconduct] and the

... [evidence obtained], the presence of intervening circumstances, and particularly, the purpose and flagrancy of official misconduct...." *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). Here the temporal proximity between the illegal seizure of Ibarra's vehicle and his alleged "continuing consent" to the subsequent search convinces the court that the taint was not purged in that the two occurred almost simultaneously. Further, Ibarra was separated from his vehicle and transported by one of the officers to a location where he was left for the duration of the second search, which occurred shortly thereafter. A second consent to this search was never obtained. Certainly it cannot be said that some intervening circumstance purged the taint of the unlawful seizure. Finally, although officer Mahaffey candidly testified that he thought he had a continuing consent to search, the seizure itself was motivated by an investigatory purpose for which he lacked probable cause to believe the vehicle contained contraband. Despite this motive and lack of probable cause he failed to inform Ibarra that such a search would in fact be conducted outside his presence.

The government did not present any evidence concerning the specific circumstances under which the officers obtained possession of the car keys other than they were obtained in connection with the seizure of the vehicle. The court must conclude that the government has failed to prove that the officers searched Ibarra's

vehicle pursuant to a "continuing consent" or that by gaining possession of Ibarra's car keys the officers obtained Ibarra's specific and unequivocal consent to a second investigatory search, which occurred not only after the vehicle had been taken miles from where the first search was conducted, but equally important, occurred outside the presence of the defendant.[3] Assuming Ibarra did not revoke his consent to subsequent searches, any "continuing consent" was tainted by a fourth amendment violation for which no intervening, attenuating event occurred to dissipate that taint.

Despite the government's concerns to the contrary, the court does not rely on *Recalde*, 761 F.2d 1448, for its concluding that the officers had to obtain a second consent before conducting a second search.[4] The court merely states the unremarkable proposition that where there is evidence of a revocation of consent, as there is in this case, the government must prove that the police obtained a second consent to a subsequent search. *Recalde*, not being to the contrary,

IT IS HEREBY ORDERED that the government's motion on the continuing consent issue be DENIED.

---

**3.** It is well recognized principle of constitutional law that a person has a right to revoke his consent to a warrantless search at any time before the discovery of contraband. *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir.1986). In arguing that the officers conducted the second investigatory search pursuant to Ibarra's supposed continuing consent, the government substantially dilutes the defendant's right to revoke his consent. Assuming there was a continuing consent, which the court finds that the government has failed to prove, the officers, by conducting the second search in the defendant's absence, cut off the defendant's right to revoke his consent. Thus the court would be reluctant to find a continuing consent where the officers fail to inform the defendant that a second search is going to be conducted in his absence.

**4.** In *Recalde*, as in this case, police officers conducted a second warrantless search of the defendant's vehicle after they unlawfully seized both the vehicle as well as the defendant. Ibarra, of course, does not argue that the officers unlawfully seized his person. Unlike in this case, however, the officers obtained the defendant's second consent, which the Tenth Circuit found vitiated by the unlawful seizure of the defendant. Although in *Recalde* the court did not state whether there was any evidence that upon conclusion of the first search the defendant revoked his consent, it nevertheless analyzed the validity of the second search in light of the facts under which the officers obtained the defendant's second consent.