UNITED STATES of America,
Plaintiff–Appellee,

v.

Francisco RODRIGUEZ–GARCIA,
Defendant–Appellant.

No. 91–4179.

United States Court of Appeals,
Tenth Circuit.

Jan. 28, 1993.

Richard D. McKelvie, Asst. U.S. Atty. (David J. Jordan, U.S. Atty., with him on the brief), Salt Lake City, UT, for appellee.

Leslie E. Nunn, Burlington, CO, for appellant.

Before LOGAN, BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Senior Circuit Judge.

Defendant Francisco Rodriguez–Garcia (Rodriguez) appeals from his judgment and sentence following his jury conviction on three counts, to-wit, possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance within one thousand feet of a school in violation of 21 U.S.C. § 845a, and possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). Alternatively, Rodriguez seeks a reduction in the sentence imposed by the district court.

*Factual Background*

In December 1990, the Organized Crime and Strike Force in Salt Lake City, Utah, began investigating Rodriguez' suspected drug activities. Several federal agents were involved in the narcotics investigation, including Case Agent Brian Seitzinger (Seitzinger) of the Drug Enforcement Agency (DEA). Seitzinger, who initiated this investigation following a call from a confidential informant, contacted Agent Creighton West (Agent West) of the Immigration and Naturalization Service (INS) who spoke fluent Spanish and who could therefore communicate with the Spanish-speaking informant, Jose Huaro (Huaro). Strike force agents determined to work with Huaro once he was verified as a reliable source.

Rodriguez had developed a relationship with Ramon Huaro (Ramon), the informant's brother, some two years before he met Huaro. According to Rodriguez, Ramon suggested that he (Rodriguez) begin trafficking narcotics. Ramon later requested that Rodriguez store several marijuana packages and a gun in exchange for the loan of a vehicle from Ramon to Rodriguez. Though Rodriguez expressed disinterest, he ultimately stored the packages because Ramon threatened that Rodriguez could otherwise experience problems with his family.

Approximately two weeks later, Rodriguez requested that Ramon remove the marijuana, and Ramon indicated that his brother, Huaro, would take care of it. Rodriguez met with Huaro, whereupon Huaro asked whether Rodriguez could obtain three kilograms of cocaine which Huaro could then supply to his nephew. Rodriguez ultimately agreed but testified that he told Huaro that he was uncomfortable storing the drugs, indicating that if the drugs were not removed soon, he would call narcotics officials. Once Huaro learned that Rodriguez would supply the cocaine, he contacted the Salt Lake City DEA and subsequently arranged to meet Rodriguez at Rodriguez' residence to negotiate the purchase of the cocaine.

Before and during the Rodriguez–Huaro negotiation, DEA Agent Brady Mackay (Mackay) maintained surveillance on Rodriguez' residence and was in radio contact with other strike force agents who had surrounded and were observing Rodriguez' apartment. During surveillance, Mackay

observed Huaro enter Rodriguez' residence on three separate occasions. Huaro left Rodriguez' apartment after the second meeting and, as planned, located and provided Agent West with a sample which Rodriguez had given him. The sample was then taken to Seitzinger who tested it to verify that it was cocaine. At this point, Seitzinger began preparing an affidavit to obtain a search warrant. Huaro returned to Rodriguez' residence a third time but left shortly thereafter and, as instructed, communicated to officers that he had observed Rodriguez with a kilogram of cocaine.

After Huaro left the third meeting, Rodriguez exited his apartment and placed a large, brown grocery bag in the trunk of a blue Chevrolet Impala which was up on blocks in his driveway. He was then arrested, at approximately 4:30 p.m., outside of his residence by armed officers, some of whom were carrying semi-automatic weapons. Rodriguez was handcuffed and placed in a DEA vehicle while officers awaited arrival of the search warrant.

Officers had obtained DEA consent to search forms which they later used for searches of a storage unit and each of two automobiles located at Rodriguez' residence. At 4:50 p.m., while in the DEA vehicle, Rodriguez signed the first consent form which permitted a search of his residence and the blue Chevrolet in his driveway. Shortly thereafter, the warrant arrived authorizing a search of Rodriguez' apartment.[1] The residential search resulted in the discovery of a .38 caliber revolver and receipts for a rented storage unit. Rodriguez provided agents with keys to the Chevrolet, and this automobile search resulted in the recovery of three kilograms of cocaine.

At 5:13 p.m., Agent West read Rodriguez his *Miranda* rights in Spanish, and Rodriguez indicated that he wanted to make no further statements but that he did want to speak with an attorney. At 5:30 p.m., Rod-

riguez signed a second form consenting to a search of the storage unit. He provided the officers with the storage unit key, and this search yielded twenty pounds of marijuana. At 5:50 p.m., Rodriguez signed the final form, consenting to the search of a yellow Chrysler which had been returned to Rodriguez' residence from a repair shop during the residential search. Nothing was discovered in this search.

Before Rodriguez was taken to jail, officers inquired whether he had valuables in his home which should be secured. He acknowledged that cash was taped to the bottom of a dresser drawer, one which, incidentally, agents had previously searched. Officers found and removed $2,700 from the drawer.

Rodriguez moved to suppress evidence obtained pursuant to the consent forms. This motion was denied, and Rodriguez was subsequently convicted. Rodriguez' motion for judgment notwithstanding the verdict, or, alternatively, for a new trial, was likewise denied.

Rodriguez raises numerous issues on appeal which may be categorized as: whether the district court erred in (1) denying Rodriguez' motion to suppress all statements made, and all evidence seized as a result of the consent to search forms; (2) denying Rodriguez' motion for a new trial; (3) giving particular jury instructions while refusing others; and (4) applying the sentencing guidelines. And finally, for the first time on appeal, Rodriguez raises a claim of juror bias.

## Discussion
### I. Motion to Suppress
#### A. *Consent to Search Forms*

██ Rodriguez contends that the district court erred in denying his motion to suppress all statements made, and all evidence seized as a result of the consent to search forms.[2] In reviewing the denial of a mo-

---

1. While Rodriguez' apartment was searched pursuant to the warrant, the search of the Chevrolet was based on the consent form.

2. Rodriguez' apartment was searched pursuant to a valid search warrant which limits the consent issue on appeal to the searches of two vehicles and the storage unit.

tion to suppress, this court will not "substitute [its] judgment for the factual findings of the district court unless those findings are clearly erroneous." *See United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992).

■ Although a search is generally deemed unreasonable unless it is conducted pursuant to a valid warrant, "it is well-settled that an exception exists for searches made following voluntary consent by an individual with authority over the place searched." *United States v. Marin*, 669 F.2d 73, 82 (2d Cir.1982). Rodriguez asserts that the consent forms in the instant case were not signed voluntarily. To prove voluntary consent, the government "must show that there was no duress or coercion, express or implied[,] [and] [t]he consent must be 'unequivocal and specific' and 'freely and intelligently given.'" *United States v. Price*, 925 F.2d 1268, 1270 (10th Cir.1991) (citing *Villano v. United States*, 310 F.2d 680, 684 (10th Cir.1962)); *see generally Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ Claiming that the first consent form was voluntarily signed before *Miranda* warnings were given, the government asserts that the search of the blue Chevrolet was valid. As in *United States v. Moreno*, 897 F.2d 26 (2d Cir.), *cert. denied*, 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990), when Rodriguez signed the first consent form, he was in custody, had not been apprised of his *Miranda* rights, and was without assistance of counsel. However, "a person placed in official custody is not thereby rendered incapable of giving his free and voluntary consent to a warrantless search." *Id.* at 33. The fact that Rodriguez had not been informed of his *Miranda* rights "does not affect our conclusion, since *Miranda* does not 'require[ ] the conclusion that knowledge of a right to refuse is an indispensable element of a valid consent.'" *Id.* (citing *Schneckloth*, 412 U.S. at 246, 93 S.Ct. at 2058).

■ Therefore, all three consent forms may be similarly evaluated to determine whether they were signed voluntarily. To determine voluntary consent, "neither the presence nor the absence of any single criteria can be controlling...." *Schneckloth*, 412 U.S. at 226, 93 S.Ct. at 2047.

■ In the instant case, the consent forms were typewritten in English and handwritten and read to Rodriguez in Spanish. Whether or not Rodriguez comprehended the handwritten Spanish, Agent West believed that Rodriguez understood the forms and their contents. Nonetheless, it is clear that Rodriguez understood the spoken language. Rodriguez was consistently addressed in Spanish and he similarly responded, invoking his *Miranda* rights, indicating he was aware of his interests and how to protect them. Agent West could not specifically recall explaining the ramifications of signing the forms or indicating that Rodriguez was not required to sign. However, he testified that Rodriguez expressed no reservations or concerns. Rodriguez' words and conduct indicate that he freely consented to the three searches in issue. He provided agents with keys to both the Chevrolet and the storage unit and did not attempt to stop or restrict the searches in any way. *See United States v. Corral*, 899 F.2d 991, 993–94 (10th Cir. 1990).

Furthermore, we find no evidence of coercion or duress. Though Rodriguez asserts that he was held in the DEA vehicle for between one hour and one hour and twenty minutes, testimony indicated that he was inside his apartment during the residential search. While armed agents were present at Rodriguez' apartment, there is no evidence that Rodriguez was abused, frightened or otherwise threatened. Aside from Rodriguez' testimony that he was pushed into the snow while being arrested, there is no evidence of contact between Rodriguez and agents present. There is similarly no evidence that agents forced or in any way coerced Rodriguez into signing the forms. In view of the totality of the circumstances, we conclude that Rodriguez voluntarily consented to the searches of the two vehicles and the

storage unit, and hold that the district court's findings are not clearly erroneous.

■ Finally, Rodriguez claims that the district court erred in denying his motion to suppress evidence of the cash found in his apartment. Rodriguez asserts that no testimony indicated that the $2,700 was tied to a crime of which he was charged.

■ The district court has broad discretion under Fed.R.Evid. 405, 28 U.S.C., when balancing probative value against prejudicial effect, and reversal is appropriate only upon a showing of abuse. Though in this case we are not dealing with a sizeable amount of cash which might otherwise be viewed as a "tool of the trade," "the possibility that the seized cash was the product of entirely lawful activities goes to the weight of the evidence, not its admissibility." *United States v. Martinez,* 938 F.2d 1078, 1085 (10th Cir.1991). Furthermore, "it is not necessary that every piece of evidence admitted ... be sufficient by itself to prove the crime alleged." *Id.* The government notes that, at trial, Rodriguez did not object to the introduction of this evidence but instead explained that he had earned the money in his job. Accordingly, we find no abuse of discretion in the trial court's decision to admit evidence of the discovery of $2,700.

## B. *Miranda Warning*

Rodriguez argues that once he indicated that he did not want to make further statements, all questioning had to cease. It is uncontested that, while in custody, Rodriguez invoked his *Miranda* right to remain silent. The issue therefore is whether, in being asked to sign consent to search forms, Rodriguez was "interrogated" in violation of this right.

*Miranda* warnings were designed to protect a defendant's Fifth Amendment privilege against self-incrimination during "custodial interrogation." According to *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982),

the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

■ Every federal circuit court which has addressed the *Miranda* issue presented here has reached the conclusion that a consent to search is not an incriminating statement. *See United States v. Lewis,* 921 F.2d 1294, 1303 (D.C.Cir.1990); *United States v. Glenna,* 878 F.2d 967, 971 (7th Cir.1989); *Cody v. Solem,* 755 F.2d 1323, 1330 (8th Cir.), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *Smith v. Wainright,* 581 F.2d 1149, 1152 (5th Cir. 1978); *United States v. Lemon,* 550 F.2d 467, 472 (9th Cir.1977). We agree. We hold that a consent to search is not the type of incriminating statement which the Fifth Amendment was designed to address. Consenting to a search is not "evidence of a testimonial or communicative nature" which would require officers to first present a *Miranda* warning.

Relying on *United States v. Ibarra,* 731 F.Supp. 1037 (D.Wyo.1990), Rodriguez asserts that any consent given subsequent to his invocation of *Miranda* was invalidated, and additionally, any previous consent given was rescinded or revoked. Rodriguez' reliance is misplaced. *Ibarra* deals with "continuing consent," allowing a search of the same location a second time. In our case, Rodriguez signed a new and separate consent form for each area searched. As such, the issue of continuing consent is not present. We hold that Rodriguez' voluntary consent to the searches of two vehicles and a storage unit was unaffected by the invocation of his *Miranda* rights.

## C. *Admissibility of Recorded Conversation*

■ Before surveillance was established at Rodriguez' apartment, Rodriguez contacted Huaro by phone to initiate negotiations. Rodriguez placed three calls to the DEA undercover number which he had

been given by Huaro. Agents West and Seitzinger were present with Huaro during the calls, at which time Agent West translated into English Huaro's portion of the conversations. Two calls were recorded and later transcribed and translated into English.

Rodriguez contends that these conversations constitute "bad guy" evidence, that the Government failed to provide an adequate chain of custody in that a tape recording may be subject to alteration or tampering, that the admission of the recording was not based on an adequate foundation, and that much of the tape was unintelligible. We review the trial court's admission of evidence for an abuse of discretion. *Durtsche v. American Colloid Co.*, 958 F.2d 1007, 1011 (10th Cir.1992).

▆ Where a party to a conversation consents to the interception of that conversation, such interception is lawful. *See United States v. Davis*, 780 F.2d 838, 846 (10th Cir.1985). Citing *United States v. Currier*, 836 F.2d 11 (1st Cir.1987), Rodriguez asserts that this recording constitutes "bad guy" (bad character) evidence. In *Currier*, admission of a recording was reviewed under Fed.R.Evid. 403 [3] and 404(b).[4] There, the court considered whether the recording was probative for any purpose *other* than to show bad character. Undertaking a similar analysis, the trial court in the present case found the recording probative in that it corroborated Huaro's testimony and evidenced Rodriguez' knowledge and intent. We hold that the district court did not abuse its discretion in determining that the probative value was not substantially outweighed by a danger of unfair prejudice.

▆ We have "specifically rejected the adoption of 'inflexible [foundation] criteria applicable to all cases,' [and] will not upset

the [trial] judge's admission of a recording unless the foundation was clearly insufficient to insure the accuracy of the recording." *United States v. Jones*, 730 F.2d 593, 597 (10th Cir.1984) (citing *United States v. Smith*, 692 F.2d 693, 698 (10th Cir.1982)). We are convinced that the government established a sufficient foundation in this case. Agent West testified that he was present when the conversations were recorded, that he simultaneously translated Huaro's portion of the discussion into English, and that he kept the recording in his possession until he was later involved in its transcription and translation. Under such circumstances, we hold that this evidence was properly admitted. *See United States v. McIntyre*, 836 F.2d 467, 470 (10th Cir. 1987).

This court has indicated that when evidence is open to alteration or tampering, a more elaborate chain of custody is required. "The standard required is a chain of custody 'with *sufficient completeness* to render it *improbable* that the original item has either been exchanged with another or been contaminated or tampered with.'" *United States v. Clonts*, 966 F.2d 1366, 1368–69 (10th Cir.1992) (citing *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989)). Given Agent West's testimony evidencing an appropriate chain of custody, we cannot say that the trial court abused its discretion in admitting the recordings.

Although Rodriguez has not indicated in what manner the recording is unintelligible, this court has held that "[u]nless the unintelligible portions are so substantial as to render untrustworthy the recordings as a whole, the tapes may be admitted." *United States v. Mittleider*, 835 F.2d 769, 773 (10th Cir.1987), *cert. denied*, 485 U.S.

---

**3.** Fed.R.Evid. 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**4.** Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

980, 108 S.Ct. 1279, 99 L.Ed.2d 490 (1988). We hold that the trial court acted within its discretion in admitting these recorded conversations.

## II. Motion for New Trial

 The district court's decision on a new trial motion is reviewed under an abuse of discretion standard. *See United States v. Thornbrugh,* 962 F.2d 1438, 1443 (10th Cir.1992).

### A. *Offense Charged in Indictment*

 Rodriguez asserts that in the indictment he was charged with violating 21 U.S.C. § 845(a) (distribution to persons under age twenty-one). No evidence was presented regarding this charge. Rodriguez claims that he was convicted of violating 21 U.S.C. § 845a (distribution or manufacturing in or near schools and colleges), which was not charged in the indictment. Based thereon, he contends that this variance constitutes a constructive amendment to the indictment, requiring reversal.

While the language of the indictment correctly identifies by description and number the offense charged (21 U.S.C. § 845a—intent to distribute at "a place within one thousand feet of the real property comprising a public college"), the caption of the indictment erroneously enumerates the statute as 21 U.S.C. § 845(a). "An error in the citation of a statute, or its omission, is not grounds for dismissal of an indictment or information, nor is it grounds for reversal of a conviction unless the error or omission misleads the defendant to his prejudice." *United States v. Malicoate,* 531 F.2d 439, 440 (10th Cir.1975).

Rodriguez does not assert that this reference misled him to his prejudice, and the record would not support such a contention. Trial testimony indicates that Rodriguez resided near a public college. The arraignment proceeding transcript does not reveal that Rodriguez was misled as to the charge concerning proximity to a school. Moreover, Rodriguez did not object to jury instructions given regarding this charge. It is clear that, regardless of the statutory citation, Rodriguez was aware that he was charged with intentionally distributing narcotics within one thousand feet of a public college. We hold that the indictment clearly identifies the correct violation, both by statutory reference to 21 U.S.C. § 845a and by specific language regarding proximity to a school.

### B. *Leading Questions*

 Rodriguez asserts that government counsel asked leading questions of its chief witness, Huaro, who was neither a hostile witness nor identified with an adverse party. Rodriguez contends that use of an interpreter ensured that Huaro understood the questions being asked and that the jury understood the testimony being given.

Rodriguez neither pinpoints an instance when counsel used a leading question nor identifies how he was thereby prejudiced. The government correctly indicates that, because Huaro did not speak English, in the event that a leading question was propounded under Fed.R.Evid. 611(c), 28 U.S.C., it was permitted as "necessary to develop the witness' testimony." According to the Advisory Committee Notes, a leading question may be asked of an adult witness with communication problems. Rodriguez presents no reason to deviate from this sound practice and, in fact, acknowledges "that there's a language situation here." We hold that Rodriguez has failed to demonstrate an abuse of discretion by the district court.

### C. *Evidence of Nephew's Involvement*

Rodriguez claims that because Huaro acted as a broker in negotiating the purchase of cocaine for his nephew, the district court erred in refusing Rodriguez' inquiry into the nephew's arrest for drug offenses. He asserts that this evidence affects Huaro's credibility.

"The trial court is given broad discretion in determining whether evidence is relevant and whether the probative value of the evidence outweighs any unfair prejudice...." *United States v. Abreu,* 962 F.2d 1425, 1436 (10th Cir.1992). We hold that the district court did not abuse its

discretion in this instance. The district court indicated that there was no evidence in the record linking the nephew and Rodriguez. As such, we affirm the trial court's denial of this line of inquiry.

### D. *Evidence of Informant's Prior Conviction*

■ Rodriguez asserts that the trial court erred in refusing to permit the introduction of Huaro's previous drug conviction which occurred in 1975. Rodriguez contends that this conviction was relevant as affecting Huaro's credibility and that its probative value substantially outweighed any prejudicial effect.

■ As a general rule, evidence of a conviction over ten years old is inadmissible. However, as this court indicated in *United States v. Jefferson*, 925 F.2d 1242, 1250 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 238, 116 L.Ed.2d 194 and *cert. denied*, — U.S. —, 112 S.Ct. 239, 116 L.Ed.2d 194 (1991), the district court has discretion to permit the introduction of convictions which fall outside of the ten year period if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed.R.Evid. 609(b), 28 U.S.C.

Huaro's conviction occurred more than sixteen years prior to this trial, making the conviction too remote to relate to his present credibility. Further, no specific facts or circumstances indicate that the probative value of this evidence would substantially outweigh its prejudicial effect. We hold that the district court did not abuse its discretion in excluding evidence of Huaro's prior conviction.

### E. *Testimony of Informant*

■ Rodriguez contends that the trial court erred in permitting Huaro's testimony. Huaro testified that he had worked as an informant on several occasions and had previously been paid when he did a good job. He also indicated that although he did not discuss compensation with any agent in the instant case, he ultimately received $2000. Rodriguez asserts that Huaro's compensation was contingent upon his trial testimony and that he therefore should not have been permitted to testify.

We hold that Huaro's compensation was not based on an impermissible fee arrangement when, as here, Huaro was compensated the day following Rodriguez' arrest. "[I]t does not appear that [a mere] offering of a governmental reward for activities leading to the *arrest* of [an] appellant is, in itself, violative of Fifth Amendment due process. (citation omitted) While a different result might obtain where a contingent fee is offered for activities leading to the *conviction* of a defendant...." *United States v. Ladley*, 517 F.2d 1190, 1193 (5th Cir.1975). As Huaro's financial arrangements were not contingent upon his trial testimony, the court did not err in permitting him to testify.

■ Counsel elicited from Huaro that, in exchange for his appearance in court in the instant case, the government paid for Huaro's expenses such as his accommodations and airfare. It has been held "that payment of expenses is not a contingent fee arrangement...." *United States v. Carcaise*, 763 F.2d 1328, 1332 (11th Cir. 1985). We agree. Huaro's receipt of payment affects the weight, not the admissibility, of his testimony, and Rodriguez was afforded the benefit of an appropriate jury instruction to this effect.[5] *See United States v. Avila–Macias*, 577 F.2d 1384, 1389 (9th Cir.1978).

### III. Jury Instructions

Rodriguez contends that the district court submitted prejudicial jury instructions. He asserts that he offered reasonable, accurate statements of the law con-

---

5. The jury was instructed as follows:
 The testimony of an informer who provides evidence against a defendant for pay, or for personal advantage or vindication, must be examined and weighed by the jury with great-

er care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant.

cerning affirmative defenses in general and the affirmative defense of entrapment in particular, both of which were refused. He also contends that he was entitled to an instruction on the lesser included offense of simple possession, asserting that the jury might have acquitted him of the possession with intent to distribute charge.

"When reviewing a claim of error relating to jury instructions, the instructions must be read and evaluated in their entirety." *United States v. Barrera–Gonzales,* 952 F.2d 1269, 1272 (10th Cir.1992). "[S]o long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction is not an abuse of discretion." *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 473 (10th Cir. 1990).

 In the instant case, the district court instructed the jury on the affirmative defense of entrapment, indicating that the burden rested with the government to prove that Rodriguez was not entrapped. An instruction on the lesser-included offense was not supported by the evidence, since such instruction is warranted only if a rational jury could convict of the lesser offense and acquit of the greater. *United States v. Lajoie,* 942 F.2d 699, 701 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 328, 116 L.Ed.2d 268 (1991). Here, a rational jury could not infer that Rodriguez was simply in possession of the drugs for personal use. He was attempting to sell drugs to Huaro and possessed three kilograms of cocaine valued at more than $600,000 and twenty pounds of marijuana. We hold that the district court did consider Rodriguez' proffered instructions but rejected them due to their inapplicability or redundancy. No reversible error was committed.

## IV. Sentencing Guidelines

 Rodriguez asserts that use of the Sentencing Guidelines denied him due process, equal protection, a fair trial, and the right to be heard. He contends that because the guidelines lump all defendants together, he was precluded from presenting evidence of mitigating factors, namely of his good character, which deprived him of an individualized sentence. "This court views the district court's application of the sentencing guidelines and facts under a 'due deference' standard and reviews *de novo* the overall application of the guidelines for errors of law." *See United States v. Butler,* 966 F.2d 559, 563 (10th Cir.1992). When a challenge is not to the trial court's exercise of discretion but rather to the constitutionality of the sentencing guidelines, this court has jurisdiction to address the issue on appeal. *See United States v. Kuntz,* 908 F.2d 655, 657 (10th Cir.1990).

In *United States v. Thomas,* 884 F.2d 540, 542 (10th Cir.1989), we discussed the constitutionality of these guidelines. We held that there is no due process violation in application of the sentencing guidelines. *Id.* at 544; *see also United States v. Hatch,* 925 F.2d 362, 363 (10th Cir.1991). Furthermore, "[t]here is no federal substantive liberty interest in an individualized determination of an appropriate sentence." *Thomas,* 884 F.2d at 542. Rodriguez' argument that he was denied the right to be heard is another version of his individualized sentence argument, which we have rejected, and Rodriguez presents no articulable facts upon which we might evaluate his equal protection claim. The district court correctly found no basis for departure from the guidelines. The court imposed the minimum sentence as mandated, without violating Rodriguez' constitutional rights.

## V. Juror Bias

 Rodriguez contends that he did not receive an impartial jury as guaranteed by the Sixth Amendment and is therefore entitled to a new trial. Though no potential jurors admitted knowing Rodriguez, he contends that he knew juror Valerie Juarez, as they had both worked at LDS Hospital.

Rodriguez' counsel failed to challenge this juror and now raises, for the first time on appeal, this claim of juror bias. This court has observed that "there may be situations where the litigant waives any

objection to the composition of the jury by failing to pursue the matter in timely fashion (citation omitted) [which] is consistent with the general rule that a defendant, by accepting a jury, waives his right to object to the panel." *United States v. Diaz–Albertini,* 772 F.2d 654, 657 (10th Cir.1985), *cert. denied,* 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987) (citing *Leggroan v. Smith,* 498 F.2d 168, 171 (10th Cir.1974)).

Our review of the record indicates that the issue of juror bias was not raised, preserved, or presented to the district court. We will not consider this issue raised for the first time on appeal. *Harris Mkt. Research v. Marshall Mktg. & Communications, Inc.,* 948 F.2d 1518, 1525 (10th Cir.1991) (citing *Farmers Ins. Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir. 1989)).

We AFFIRM.