**UNITED STATES of America, Plaintiff–Appellant,**

**v.**

**Charles Douglas PRICE, Defendant–Appellee.**

No. 90–8039.

United States Court of Appeals, Tenth Circuit.

Feb. 8, 1991.

Sean Connelly (Richard A. Stacy, U.S. Atty., and John R. Green and Maynard D. Grant, Asst. U.S. Attys., Dist. of Wyoming, with him on the brief), for plaintiff-appellant.

Robert T. Moxley (Victor L. Abbo, Boulder, Colo., with him on the brief), Cheyenne, Wyo., for defendant-appellee.

Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, N.M., on the brief for amicus curiae, National Ass'n of Criminal Defense Lawyers.

Before LOGAN, and TACHA, Circuit Judges, and GREENE, District Judge.*

TACHA, Circuit Judge.

Defendant-appellee Charles Douglas Price was indicted for possession of cocaine

---

* Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) while in possession of a handgun in violation of 18 U.S.C. § 924(c). Price filed a motion to suppress the cocaine and the handgun from evidence, arguing they were recovered during an illegal search of the vehicle he had been driving. The district court denied the motion but later granted a motion for reconsideration. Upon reconsideration, the district court reversed its earlier ruling and suppressed the evidence. On appeal, the government argues the district court erred by applying a presumption against a waiver of constitutional rights in suppressing the evidence. We reverse and remand for reconsideration consistent with this opinion.

The items of suppressed evidence were seized when Wyoming Highway Patrol Officer Wyatt Howard stopped Price for exceeding the speed limit and driving with expired license plate decals. Price was unable to produce a registration when asked, explaining he had borrowed the car from a friend. The officer gave Price a verbal warning for speeding and cited him for a violation of registration requirements. When Howard confirmed by a computer check that the vehicle was registered to the individual Price had named, he returned Price's driver's license.

Because Howard still was concerned about whether Price had the owner's permission to use the vehicle, he asked Price if he had the owner's phone number. Before Price gave the officer the number, the officer said he would like to ask Price a couple questions. Price agreed to respond. Howard testified he asked Price "if he was carrying any illegal weapon, illegal drugs of any kind, or large amounts of cash." Price replied he was not. The officer then asked if he could look in the vehicle. Price told Howard he could "look in the trunk."

Price opened his trunk, moved the luggage around, and said, "[a]s you can see, there's no large caches of drugs in my trunk here." Officer Howard responded by telling Price to stand approximately thirty feet behind the vehicle. Howard then unsnapped the spare tire cover and reached for a small pouch that contained various documents. Price approached the vehicle and said, "I know my plates are expired, but I'm a well-respected businessman." Howard again ordered Price to stand back and not make any more "sudden movements or rapid approaches," lest he misinterpret Price's intentions.

After examining the pouch, Howard replaced it and began to search Price's luggage. This search revealed a baggie containing a small amount of marijuana. Howard then searched the entire vehicle. He found twenty-five grams of cocaine, approximately $12,000 in cash, and a loaded nine-millimeter handgun in the automobile. Howard arrested Price.

Price premised his motion to suppress on three grounds. First, he asserted the stop was pretextual. Second, he argued his consent was obtained after an unlawful detention in violation of the fourth amendment. Finally, Price contended Howard's search exceeded the scope of his consent.

The district court rejected all three theories and denied Price's motion. The judge found the traffic stop legitimate. He also found Price had consented to a search of the luggage in his trunk and had not revoked that consent.

Six-and-one-half months later, the district court reconsidered Price's motion and decided to suppress the evidence. The court did not revisit the pretextual stop argument but found Price had given his consent to a very limited search that only involved a "look" in the trunk. The court also found Price had not expanded his consent implicitly by acquiescing in Howard's decision to continue to search through the contents of the trunk. Finally, the court concluded that even if Price acquiesced in an expansion of the scope of the search, any consent implied by acquiescence was vitiated by an unlawful arrest. The government appeals this superseding order, contending it was premised on a misapplication of the law.

We review a district court's factual findings regarding consent under a clearly erroneous standard. *United States v. Benitez*, 899 F.2d 995, 997 (10th Cir.1990).

However, when findings are premised on "an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." *Pullman–Standard v. Swint,* 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66 (1982).

■ To admit evidence obtained in a consent search, a district court must find from the totality of the circumstances that (1) the defendant's consent to an officer's search was voluntary and (2) the search did not exceed the scope of the defendant's consent. *See, e.g., United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir.1986).

Although the district court's factual conclusions on these issues in the initial and superseding orders are contradictory, we cannot say they are clearly erroneous. For example, on the key issue of the scope of Price's consent, the district court first found a broad consent, then a limited consent. The record could support either finding. Officer Howard's testimony was that when he requested to look in Price's car, Price responded, "you can look in the trunk, sure." Bernard Boyle, an agent of the Wyoming Division of Criminal Investigation, spent several hours interviewing Howard about the search. Boyle's report indicated Howard had asked to make a "cursory search" of Price's trunk. Finally, Price's actions and comments when Howard began an in-depth search of the trunk, although ambivalent, lend support to the district court's finding in its superseding order that Price had consented to a limited search, *i.e.,* a "look in" the trunk.

We do not affirm the court's superseding order, however, because it contains an error of law that apparently affected its view of the facts. The court announced in that order that it reviewed the facts regarding the scope of Price's consent with "a presumption against waiver of fundamental constitutional rights." It is unclear from the record precisely what role this presumption played in the district court's reversal of its initial order. However, it is clear the court's application of the presumption was error that may have influenced the decision to suppress.

■ The presumption against voluntary waiver of constitutional rights does not apply in consent search cases. In *Schneckloth v. Bustamonte,* 412 U.S. 218, 235–37, 93 S.Ct. 2041, 2051–53, 36 L.Ed.2d 854 (1973), the Supreme Court reviewed cases that had applied a waiver analysis in determining whether defendants had forfeited constitutional rights. The Court found this mode of analysis is proper when constitutional rights guaranteeing a fair trial under the fifth and sixth amendments, such as the right to counsel or against self-incrimination, are at issue. *Id.* at 241–42, 93 S.Ct. at 2055. The Court painstakingly distinguished cases involving the fourth amendment concern with consent searches, *id.* at 236–37, 241–46, 93 S.Ct. at 2052–53, 2055–58, concluding the state need not prove a "knowing waiver" of the right to refuse consent, *id.* at 246–47, 93 S.Ct. at 2057–58; *see also id.* at 245, 93 S.Ct. at 2057 (" 'waiver' approach to consent searches would be thoroughly inconsistent with our decisions that have approved 'third party consents' "). Significantly, the Court emphasized the proper test in consent search cases is not whether there was a waiver of the defendant's fourth amendment rights, *id.* at 245–47, 93 S.Ct. at 2057–58, but whether the consent to search was voluntary under the totality of the circumstances, *id.* at 227, 232–33, 249, 93 S.Ct. at 2047, 2050–51, 2059. Because the focus of the inquiry is not whether rights were waived but whether consent was voluntary, the Court further held a presumption against waiver should not apply in these cases. *Id.* at 243, 93 S.Ct. at 2056.

Before *Schneckloth* was decided, we had adopted a test for voluntariness of consent searches that included the presumption against waiver:

> "The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently given.' There must be convincing evidence that defendant has waived his rights.... *'Courts indulge every rea-*

*sonable presumption against waiver' of fundamental constitutional rights."* *Villano v. United States*, 310 F.2d 680, 684 (10th Cir.1962) (quoting *United States v. Page*, 302 F.2d 81, 83–84 (9th Cir.1962) (emphasis added) (citations omitted)).[1] In subsequent consent search cases, we recited the *Villano* test without explicity considering the intervening *Schneckloth* holding that the presumption against waiver should not be transposed from the trial rights context to the consent search context. *See, e.g., United States v. Carson*, 793 F.2d 1141, 1150 (10th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986); *United States v. Gay*, 774 F.2d 368, 376 (10th Cir.1985). Although we apparently did not rely on the presumption in any of these cases, we have retained the presumption language as part of our test for voluntariness of a defendant's consent to a search. In contrast to our position, every other circuit has followed *Schneckloth* by rejecting the waiver approach and employing the traditional "totality of the circumstances" test in this context.[2]

In light of the *Schneckloth* decision, we are convinced a district court determining the admissibility of evidence should not presume a defendant's consent to a search is either involuntary, 412 U.S. at 242–43, 93 S.Ct. at 2055–56, or voluntary, *Carson,* 793 F.2d at 1150. The voluntariness of consent always must be determined from the totality of the circumstances. *See, e.g., Schneckloth,* 412 U.S. at 227, 232–33, 249, 93 S.Ct. at 2047, 2050–51, 2059; *Espinosa,* 782 F.2d at 892. The government, of course, has the burden of proving a voluntary consent. *See, e.g., Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); *Schneckloth,* 412 U.S. at 249, 93 S.Ct. at 2059. The general inquiry outlined in *Villano* and its progeny remains relevant. *See* 310 F.2d at 684. We find only the *Villano* test's application of the presumption against waiver improper.[3]

Similarly, a district court should not apply the presumption in determining the scope of consent. The question of the scope of consent is "[a] subspecies of the voluntariness inquiry." *United States v. Sierra–Hernandez,* 581 F.2d 760, 764 (9th Cir.1978). Just as it is inappropriate to apply a presumption against waiver in determining voluntariness, it is inappropriate to use the presumption in determining the scope of consent. *See generally Schneckloth,* 412 U.S. at 241–47, 93 S.Ct. at 2055–

---

**1.** The *Page* court, from whom we adopted the test, in turn took the "presumption against waiver" approach from *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *Page,* 302 F.2d at 84 & n. 6. *Johnson* involved the sixth amendment right to assistance of counsel and was one of the principal cases the Supreme Court distinguished in *Schneckloth. Schneckloth,* 412 U.S. at 235–46, 93 S.Ct. at 2051–58.

**2.** *See, e.g., United States v. Maragh,* 894 F.2d 415, 420 (D.C.Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 214, 112 L.Ed.2d 174 (1990); *United States v. Rodriguez Perez,* 625 F.2d 1021, 1024 (1st Cir.1980); *United States v. Calvente,* 722 F.2d 1019, 1023 (2d Cir.1983), *cert. denied,* 471 U.S. 1021, 105 S.Ct. 2030, 85 L.Ed.2d 313 (1985); *United States v. Sebetich,* 776 F.2d 412, 424 (3d Cir.1985), *cert. denied,* 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988); *United States v. Poole,* 718 F.2d 671, 674 (4th Cir.1983); *United States v. Hall,* 565 F.2d 917, 920–21 (5th Cir. 1978); *United States v. Williams,* 754 F.2d 672, 674–75 (6th Cir.1985); *United States v. Scott,* 578 F.2d 1186, 1188–89 (6th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182

(1978); *United States v. Colonia,* 870 F.2d 1319, 1324 (7th Cir.1989); *United States v. Rambo,* 789 F.2d 1289, 1296 (8th Cir.1986); *United States v. Licata,* 761 F.2d 537, 544 (9th Cir.1985); *United States v. Alfonso,* 759 F.2d 728, 740 (9th Cir.1985); *United States v. Blake,* 888 F.2d 795, 798 (11th Cir.1989); *see also Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); Stuntz, *Waiving Rights in Criminal Procedure,* 75 Va.L.Rev. 761, 780–82, 787 (1989). *But see United States v. Shaibu,* 895 F.2d 1291, 1293–94 (9th Cir.1990) (reciting presumption) (citing *United States v. Page,* 302 F.2d 81, 84 (9th Cir.1962) without reference to *Schneckloth* or post-*Schneckloth* Ninth Circuit cases, *see, e.g., supra* ); *Tarter v. Raybuck,* 742 F.2d 977, 980 (6th Cir.1984) (reciting presumption) (citing no authority), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985); *cf. United States v. Jones,* 641 F.2d 425, 419 (6th Cir.1981) (discussing consent as "waiver" of fourth amendment rights but employing totality of circumstances test without presumption).

**3.** This opinion has been circulated among the entire Tenth Circuit Court of Appeals, which concurs in our resolution of this issue.

**1272**

58. As we held in *United States v. Brandon*, 847 F.2d 625, 630 (10th Cir.), *cert. denied*, 488 U.S. 973, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988), a court should consider the totality of the circumstances to determine the scope of consent. *See also Espinosa*, 782 F.2d at 892.

 Because of our resolution of the foregoing issue, we also must remand on the district court's finding that "[e]ven assuming that Price acquiesced in an expansion of the [scope of] the search ... such acquiescence was vitiated by an unlawful seizure of Price' [sic] person." The district court found that Price was unlawfully seized when he was ordered to stand thirty feet from his vehicle. If Price already had consented to an in-depth search of his trunk at that time, and his intervening actions did not amount to a withdrawal of that consent, then the evidence discovered during that search is not tainted by the subsequent unlawful seizure. If, however, Price had given Howard only limited consent to "look in" the trunk, the illegal seizure vitiates any subsequent acquiescence in an expanded search. The resolution of this question depends on facts the district court must reassess without applying the presumption against waiver.

Because the district court explained the result in the superseding suppression hearing based on a misapplication of the law, we hold the court must reconsider the factual findings regarding voluntariness and scope of consent without applying the presumption against waiver. We therefore REVERSE the district court's order granting the motion to suppress and REMAND for reconsideration consistent with this opinion.