968 F.2d 21
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ricky ARENDONDO, Defendant-Appellant.
 No. 91-2103.
 United States Court of Appeals, Tenth Circuit.
 June 17, 1992.
 
 Before SEYMOUR, SNEED,* and JOHN P. MOORE, Circuit Judges.
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Ricky Arendondo appeals his conviction of possession with intent to distribute less than fifty kilograms of marijuana. He argues marijuana discovered as the result of a consensual search should have been suppressed becaused his consent was the result of an illegal seizure of his person and was involuntary. We affirm.
 
 
 2
 On October 22, 1990, DEA Special Agent Kevin Small was assigned to drug interdiction duties at the AMtrak stateion in Albuquerque. Agent Small was not in uniform, but he carried a weapon hidden in a fanny-pack around his waist. He boarded the 1:45 p.m. train, walked through the four coach cars, and was preparing to leave the train when he saw defendant sitting in the first seat in the handicapped section of the coach.
 
 
 3
 Agent Small left the train and confirmed with the conductor defendant had boarded the train in Albuquerque. He then reboarded the train and entered the handicapped section.
 
 
 4
 Although Mr. Arendondo is not visibly handicapped, he claimed he was sitting in the handicapped section because of an old back injury. That section is located on the lower level of the car, and the doors are enlarged to allow wheelchair access. The first seat in this section is a single seat with an open space adjacent to the aisle to accommodate a wheelchair.
 
 
 5
 Agent Small approached Mr. Arendondo, displayed his baddge and credentials, identified himself as a police officer, and asked, "May I talk to you?" Mr. Arendondo granted permission. Agent Small knelt in the wheelchair space, partially in front of and partially to the side of Mr. Arendondo. This placed Agent Small within two feet of defendant, but defendant claims Agent Small was so close he could feel the agent's breath on his face.
 
 
 6
 Agent Small asked him his destination, when he had boarded the train, and whether he had been visiting family. Agent Small then asked Mr. Arendondo if he had a ticket, and Mr. Arendondo handed him a one-way ti cket in the name of Scott Hochem.[1] Agent Small returned the ticket and asked defendant if he had any identification, and defendant said he did not. Mr. Arendondo explained he had been in Albuquerque for only one day and was returning to Michigan via the train instead of the bus because of his bad back.
 
 
 7
 Agent Small then told defendant he was a DEA agent who daily boarded the train looking for people traveling alone and carring narcotics. Mr. Arendondo replied he did not have any drugs. The agent then said: "Well, Scott, would you voluntarily consent for me to search your bags to make sure they don't contain any drugs?" Defendant replied affirmatively. After defendant indicated which bags were his, Agent Small pulled one down, accidently bumping defendant in the process. Agent Small opened the bag and discovered marijuana.
 
 
 8
 After his indictment, Mr. ARendondo moved to suppress the marijuana. He claimed the seizure of the marijuana was the product of an unlawful seizure of his person, that any consent he gave was the result of the unlawful seizure, and that his purported consent was involuntary. The trial court denied the motion, finding both there was no seizure and defendant's consent was voluntary.
 
 
 9
 Not all personal intercourse between policemen and citizens involves "seizures" of persons. Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occured." Id. To determine whether a particular encounter constitutes a "seizure," a court must "consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable [innocent] person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, --- U.S. ----, 111 S.Ct. 2382, 2389 (1991).[2]
 
 
 10
 The Supreme Court has stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual,[3] ask to examine the individual's identification,[4] and request consent to search his or her luggage[5] as long as the police "do not convey a message that compliance with their requests is required." Bostick, 111 S.Ct. at 2386. The cramped confines of a train are one relevant factor that should be considered in evaluating whether a passenger's consent is voluntary. Id. at 2389. Failure of the police to advise the accused of his or her rights is another factor, Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973), as is the defendant's lack of education. Payne v. Arkansas, 356 U.S. 560 (1958).
 
 
 11
 Mr. Arendondo claims that, under the circumstances of his encounter with Agent Small, a reasonable person in defendant's position would not have felt free to decline the agent's requests. He alleges the agent physically intimidated him by blocking the defendnat's access to the aisle and thus to the door.[6] He contends that during the entire exchange the agent edged closer and closer to him, cornering him in his seat. Additionally, he asserts Agent Small bumped against him on at least two occasions.
 
 
 12
 He also argues Agent Small intimidated him mentally. The agent identified himself as a DEA agent and informed defendant he fit the profile of a drug courier. He exercised his police authority by "demanding" first identification and then defendant's train ticket. Additionally, at no time did the agent indicate to the defendant he was free to refuse to answer questions. Thus, Mr. Arendondo argues he was "seized" within the meaning of the Fourth Amendment.
 
 
 13
 The government contends there was absolutely nothing coercive in the encounter. At the suppression hearing, defendant admitted he did not ask the agent to leave; he made no attempt to leave or terminate the interview; and he did nothing by word or gesture to indicate he did not want the conversation to continue. The government notes that all the questions asked by the agent have been specifically approved by the Supreme Court in various cases.
 
 
 14
 Additionally, the encounter transpired in a public place; the agent wore no uniform and never displayed his weapon; the agent requested to see defendant's ticket and promptly returned it to him before asking further questions;[7] and the agent did not intentionally have physical contact with the defendant. Thus, a reasonable, innocent person would have felt free to discontinue the conversation.[8]
 
 
 15
 Finally, Mr. Arendondo advances two related arguments which both turn on the question of whether he voluntarily gave his consent. First, he argues his consent was tainted by the illegal seizure and thus should have been suppressed. Second, he contends that even if there were no unlawful seizure, his consent was still involuntary.
 
 
 16
 When consent is obtained after an illegal arrest, the government must establish a break in the causal connection between the illegality and the evidence thereby obtained. Dunaway v. New York, 442 U.S. 200, 217-18 (1979); Brown v. Illinois, 422 U.S. 590, 602-05 (1975); United States v. Recalde, 761 F.2d 1448, 1457-58 (10th Cir.1985). Voluntary consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint. United States v. Carson, 793 F.2d 1141, 1147-48 (10th Cir.), cert. denied, 479 U.S. 914 (1986). Thus, the single issue for our consideration is whether defendant's consent to search was voluntary.
 
 
 17
 Under the Fourth Amendment, consent to a search must be voluntary in fact and free of coercion under the totality of the circumstances. Schneckloth, 412 U.S. at 248-49. This court has set out a two-tiered standard for determining whether the government has sustained the burden of showing that consent to search was in fact voluntary under Schneckloth. The government must demonstrate with "clear and positive testimony" the consent was "unequivocal and specific" and "freely and intelligently" given. United States v. Dewitt, 946 F.2d 1497, 1500 (10th Cir.1991), cert. denied, 112 S.Ct. 1233 (1992). It must also prove the consent was given without duress or coercion, express or implied. Id.[9]
 
 
 18
 Mr. Arendondo argues the government has failed to establish its burden. He contends the seizure produced the consent because the agent had been questioning him for several minutes; the train's departure was imminent and tension and pressure were heightened; and the alleged consent came during the most intimidating part of his detention. At the suppression hearing, defendant testified he consented only because he felt he had no other choice. Therefore, he claims, his consent was not in fact voluntary. He adds the agent failed to inform defendant of his right to refuse; thus, there is no assurance defendant's consent was truly free and voluntary.
 
 
 19
 The government counters the trial court correctly found defendant's consent was voluntarily given. As noted earlier, defendant did nothing by word or deed ot indicate he wished to terminate the encounter. At no point did the agent in any way threaten or attempt to coerce the defendant. The trial court's finding was based on a resolutin of conflicting testimony and is not clearly erroneous.
 
 
 20
 AFFIRMED.
 
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 *
 Honorable Joseph T. Sneed, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation
 
 
 [1]
 When asked during cross-examination why his ticket ws issued in this name, Mr. Arendondo responded, "I don't have an explanatin for that."
 
 
 [2]
 In Bostick, the Florida police boarded a bus and asked passengers various questions, including permission to search their luggage. The defendant argued whe was "seized" because he was not "free to leave" the bus because doing so would mean loss of his luggage and use of his ticket. The Court stated the fact he was a passenger on a bus scheduled to depart meant he was not "free to leave" the bus even if the police had not been present. Thus, the Court articulated the test as stated above
 
 
 [3]
 See INS v. Delgado, 466 U.S. 210, 216 (1984); Florida v. Rodriquez. 469 U.S. 1, 5-6 (1984)
 
 
 [4]
 See Delgado, 466 U.S. at 216; Florida v. Royer, 460 U.S. 491, 501 (1983) (plurality opinion); United States v. Mendenhall, 446 U.S. 544, 557-58 (1980)
 
 
 [5]
 See Royer, 460 U.S. at 501
 
 
 [6]
 Defendant makes much of the argument he did not feel free to exit the train. The Court addressed that argument in its Bostick decision. See footnote 2 above. The suggestion of intimidation is also interesting in light of the physical comparison of the two men. Mr. Arendondo testified he is 6'3"' tall and weighed 240 pounds at the time of the encounter. Without objection, the prosecutor noted Agent Small was 5'8"'
 
 
 [7]
 This fact was contested; therefore, the district court made a specific finding that the ticket was returned
 
 
 [8]
 In United States v. Ward, --- F.2d ----, 1992 WL 79095 (10th Cir.1992), we reached the opposite conclusion, but the operative facts were dissimilar. In contrast to the physically intimidating surroundings in Ward, the conversation in this case took place in an open public car immediately in front of an exit. Additionally, the conversation was between defendant and Agent Small, and no others were present in contrast to Ward. Moreover, the comparison in physical size greatly favors Mr. Arendondo, whereas Mr. Ward was 5'7"', weighed 145 pounds and was recovering from a recent kidney transplant. Each case must be judged upon its own facts to properly apply the Bostick test; therefore, the result we reach here is not contrary to Ward
 
 
 [9]
 Mr. Arendondo argues we apply a presumption against consent, a position squarely rejected in United States v. Price, 925 F.2d 1268, 1270-71 (10th Cir.1991) (We do not presume a defendant's consent ot a search is either voluntary or involuntary.)