**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arthur Marvin LOWE, Defendant–Appellant.**

**No. 91–1353.**

United States Court of Appeals,
Tenth Circuit.

July 6, 1993.

Joseph Mackey, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, CO, for plaintiff-appellee.

David A. Lane, Denver, CO, for defendant-appellant.

Before EBEL and KELLY, Circuit Judges, and VRATIL, District Judge.*

VRATIL, District Judge.

Defendant Arthur Marvin Lowe entered a conditional plea of guilty to charges of unlawful possession of a machine gun in violation of 26 U.S.C. §§ 5861(d) and 5871. The district court denied defendant's motion to suppress certain evidence obtained from defendant's home. Defendant appeals and, for reasons stated below, we affirm.

---

* The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

## I. Facts

On the evening of January 20, 1990, as part of an investigation into the sale of illegal machine guns, Agent William Frangis, Bureau of Alcohol Tobacco and Firearms, seized two unlawful machine guns from Mark Weiand. In the ensuing discussions, Weiand confessed that he owned a third gun and agreed to help Agent Frangis recover it from the residence of his friend, defendant Arthur Marvin Lowe.[1]

In the midst of a raging snowstorm later that evening, Weiand and Agent Frangis traveled in Weiand's pick-up truck to defendant's residence. Weiand radioed ahead to defendant's wife, Lorrie Lowe, and told her that he was coming to pick up his gun. Mrs. Lowe told him to come on over. Defendant was not at home, but he had already spoken to his wife and told her get the gun ready for Weiand. Mrs. Lowe therefore had the gun ready, on the floor of the back porch. The gun clip was in the kitchen, which adjoined the porch.

Upon arriving at defendant's home, Weiand entered the unlocked porch door without knocking. Agent Frangis accompanied Weiand and followed him in. Mrs. Lowe heard the men arrive and joined them almost immediately. Weiand picked up the gun and handed it to Agent Frangis. Mrs. Lowe asked Weiand whether the clip went with the gun. Weiand answered affirmatively, retrieved the clip from the kitchen, and handed it to Agent Frangis. Weiand and Agent

Frangis then left the porch with the gun and the clip. While they were driving away, Mrs. Lowe radioed Weiand and told him to be sure to oil the gun.

## II. Discussion

The trial court denied defendant's motion to suppress, holding that Mrs. Lowe had consented to the entry and seizure from defendant's house.[2] Defendant appeals, arguing that Weiand and Agent Frangis violated his Fourth Amendment rights when they entered the unlocked back porch, without knocking, and thereafter seized the machine gun.

▪ We review the trial court's factual findings regarding consent under the clearly erroneous standard. *United States v. Price*, 925 F.2d 1268, 1269 (10th Cir.1991).[3] Moreover, we must view evidence on appeal in the light most favorable to the district court findings. *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir.1992).

▪ The district court found that Weiand was acting as a government agent when he entered the Lowe residence to retrieve the gun.[4] An undercover government agent may lawfully enter the premises for the "very purposes contemplated by the occupant." *Lewis v. United States*, 385 U.S. 206, 211 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). As a government agent, however, Weiand's conduct was subject to the Fourth Amendment, *Pleasant v. Lovell*, 876 F.2d 787, 796

---

1. Unbeknownst to Agent Frangis, Weiand had previously sold the gun to defendant.

2. On these facts, Mrs. Lowe had clear authority to consent to the entry. *See United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Mrs. Lowe also had actual authority from her husband to deliver the gun to Weiand. Defendant does not contend otherwise.

3. Defendant urges us to apply a *de novo* review, arguing that this case requires us to determine whether as a matter of law "an invitation *to* one's home is the equivalent of an invitation *into* one's home." In the court's view, however, this case involves something different than a mere "invitation to one's home." Here, defendant and his wife expressly agreed that Weiand might retrieve certain property which was located within their home. From a purely legal standpoint, the relevant question might be whether consent to a taking of personal property located in one's

home carries with it an implied consent to do what is reasonably necessary to effectuate that taking, *i.e.* consent to enter the premises in a peaceful manner. We need not resolve that legal question because the record is replete with other facts—over and above naked permission to retrieve property—which evidence independent consent to the entry on the premises.

4. The test for determining whether one is acting as a government agent is whether 1) the government knew of and acquiesced in the intrusive conduct; and 2) the party performing the search intended to assist law enforcement efforts or to further his own ends. *Pleasant v. Lovell*, 876 F.2d 787, 797 (10th Cir.1989). The evidence supports the district court's finding the Weiand was acting as a government agent, and defendant does not challenge this finding.

(10th Cir.1989), and the warrantless entry of the home is "the chief evil against which ... the Fourth Amendment is directed." *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). A warrantless search or seizure is *per se* unreasonable unless shown to fall within one of a carefully defined set of exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 474, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971).

 Voluntary consent is such an exception, and where consent is present, no warrant is necessary. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). In order to find consent, the district court must find from the totality of the circumstances that (1) the consent was voluntary, and (2) the search did not exceed the scope of the consent. *United States v. Price,* 925 F.2d 1268, 1270 (10th Cir.1991). By clear and positive testimony, the court must find that the consent was "unequivocal and specific" and "freely and intelligently" given, and the government must prove that consent was given without duress or coercion. *Price,* 925 F.2d at 1270 (citing *Schneckloth, supra*).

 The district court concluded that Mrs. Lowe had consented to the entry and seizure in question. On the record, this consent was "unequivocal and specific" and "freely and intelligently" given. Weiand was a family friend and Mrs. Lowe invited him to the home. Mrs. Lowe was expecting Weiand to arrive in the midst of a raging snowstorm. If Weiand's failure to knock presented any problem on the evening of January 20, 1990, Mrs. Lowe did not communicate that fact by word or conduct. To the contrary, she placed the gun on the porch so that Weiand might easily have access to it. She met Weiand and Agent Frangis on the porch, almost at the instant of their arrival. She

did not object to their presence. In fact, she checked to make sure they had all the gun parts and later radioed Weiand to make sure he took good care of the gun. Based on the totality of these circumstances, the district court's finding of consent is not clearly erroneous.

 Even if Mrs. Lowe did not expressly agree *in advance* that Weiand and Agent Frangis could enter without knocking, and the initial entry was therefore technically unlawful, the subsequent conduct of Mrs. Lowe demonstrates voluntary consent to the entry. Where a Fourth Amendment violation precedes consent, the validity of the consent depends on whether it was sufficiently an act of free will, *i.e.* whether it was voluntary in fact. The answer to that question depends upon the totality of the circumstances surrounding the consent. *United States v. Maez,* 872 F.2d 1444, 1454 (citing *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2058–59), In that regard, the issue is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). "Exploitation of the primary illegality" occurs when the government uses fruits of the primary illegality to coerce consent. *See United States v. Carson,* 793 F.2d 1141, 1148–49 (10th Cir. 1986).[5]

 Based on the totality of the circumstances we find that even if the initial entry by Weiand and Agent Frangis was unlawful, the subsequent actions of Mrs. Lowe demonstrate consent which by clear and compelling evidence was voluntary in fact. The record is devoid of *any* evidence of coercion or exploitation of the alleged illegal entry.[6]

---

5. Although the district court did not conduct a taint analysis, we find that the proceedings below "resulted in a record of amply sufficient detail and depth from which the determination may be made." *Maez,* 872 F.2d at 1454 n. 13 (quoting *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct 2254, 2262, 45 L.Ed.2d 416 (1975)).

6. When determining whether consent is the product of free will, the court should examine the totality of the circumstances surrounding the consent, focusing on (1) the temporal proximity of the entry and the consent, (2) any intervening circumstances, and particularly (3) the purpose and flagrancy of the officer's misconduct. *See United States v. Guzman,* 864 F.2d 1512, 1520–21 (10th Cir.1988). While the temporal proximity

Conversely, all of the evidence indicates that Mrs. Lowe voluntarily consented to Weiand retrieving the gun from her home.

### III. Conclusion

For the reasons stated above, the district court's denial of defendant's motion to suppress is **AFFIRMED.**

was close in this case and there were no intervening circumstances, the conduct of Agent Frangis was purely innocent. At the time the gun was retrieved, based on representations by Weiand, Agent Frangis believed in good faith that Weiand owned the gun and that by virtue of his relationship with defendant and Mrs. Lowe, as well as the conversations which occurred on January 20, 1990, Weiand was privileged to enter the residence to retrieve the gun.

