73 F.3d 374
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos BOTERO-OSPINA, Defendant-Appellant.
 No. 94-4006.
 United States Court of Appeals, Tenth Circuit.
 Dec. 27, 1995.
 
 Before ANDERSON, McKAY, and BRORBY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Many of the basic facts of this case are set forth in our en banc opinion, in which we addressed the validity of the initial stop of Mr. Botero-Ospina's vehicle, and affirmed the district court's denial of his motion to suppress on the ground that the initial stop was valid. United States v. Botero-Ospina, 94-4006, --- F.3d ---- (10th Cir. Dec. 5, 1995) (en banc). In that opinion, we remanded to the panel the remaining issues in this case, which the panel now addresses.
 
 
 3
 In addition to challenging the initial stop of his vehicle as pretextual, Mr. Botero-Ospina also challenges the denial of his motion to suppress on the ground that his detention was unconstitutional and that his consent to search was not freely given.
 
 
 4
 After stopping Mr. Botero-Ospina, Deputy Barney asked for and received a license and registration. While Mr. Botero-Ospina produced a valid New York driver's license, the car was registered in New Jersey to Mr. Jaime Higuero. The registration notwithstanding, Mr. Botero-Ospina claimed to have bought the car two weeks earlier from "some lady" in Los Angeles. Mr. Botero-Ospina could neither name the woman nor identify a connection between this woman and Mr. Higuero. Mr. Botero-Ospina then stated that he had purchased the vehicle at a price which Deputy Barney considered abnormally low for a 1987 Nissan minivan. Lastly, Mr. Botero-Ospina claimed to have spent the previous night in Garfield; no town of that name, however, lies along Interstate 15 in either Utah or Nevada.
 
 
 5
 It took Deputy Barney somewhat more than two minutes to elicit the above information from Mr. Botero-Ospina. Deputy Barney then asked Mr. Botero-Ospina if he were smuggling drugs or guns, which Mr. Botero-Ospina denied. Before returning Mr. Botero-Ospina's license or registration, Deputy Barney asked for permission to inspect the van, and Mr. Botero-Ospina consented. Examination of the passenger area quickly revealed that the floor had been raised and the carpet replaced. Deputy Barney also noted a package of undersealant. Suspecting a secret compartment, Deputy Barney looked under the van and discovered a small, hidden door. Deputy Barney arrested Mr. Botero-Ospina and called for backup.
 
 
 6
 In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. United States v. McSwain, 29 F.3d 558, 560 (10th Cir.1994). The ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo. United States v. Horn, 970 F.2d 728, 730 (10th Cir.1992).
 
 
 7
 Mr. Botero-Ospina does not dispute that probable cause to arrest him existed after Deputy Barney discovered the tell-tale signs of the hidden compartment. He contends, rather, that the series of questions that culminated in the request to inspect the van was unsupported by reasonable suspicion. See United States v. Fernandez, 18 F.3d 874, 878-79 (10th Cir.1994). We disagree. Not only was Mr. Botero-Ospina unable to plausibly account for his possession of the van, but he also claimed to have paid a surprisingly low price for the van and described a purchase arrangement that bordered on the bizarre. Mr. Botero-Ospina named a nonexistent town as his most recent rest-stop. See United States v. Soto, 988 F.2d 1548, 1554-56 (10th Cir.1993). Giving due deference to the factual findings and inferences made by the magistrate judge and the district court, we affirm the conclusion that Deputy Barney possessed reasonable suspicion to question Mr. Botero-Ospina and to detain him for the short period of time needed to locate the secret compartment.
 
 
 8
 Mr. Botero-Ospina also contests the validity of his consent to Deputy Barney's request to search the vehicle. The government bears the burden of proving that consent is in fact voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Deputy Barney retained possession of Mr. Botero-Ospina's license and registration at the time consent was given. The encounter was therefore not consensual. See Soto, 988 F.2d at 1557. Deputy Barney also failed to inform Mr. Botero-Ospina that he had the right to refuse the search. Nonetheless, the record contains no evidence of overt coercion and almost no evidence suggestive of implicit coercion. Before beginning the search, Deputy Barney twice asked for permission. The encounter between Deputy Barney and Mr. Botero-Ospina occurred at eleven o'clock in the morning. Deputy Barney's pistol remained holstered. Deputy Barney spoke in a controlled tone and did not threaten Mr. Botero-Ospina in any way. Mr. Botero-Ospina did not protest any of Deputy Barney's actions and did not seek to limit the scope of the consent.[1] In sum, Mr. Botero-Ospina's consent was unequivocal and specific; it was freely given; and no evidence exists of coercion or duress. See United States v. Price, 925 F.2d 1268, 1270-71 (10th Cir.1991). We therefore cannot say that the district clearly erred in finding the consent to be valid. Accordingly, we affirm the denial of Mr. Botero-Ospina's motion to suppress.
 
 
 9
 In addition to challenging the denial of his motion to suppress, Mr. Botero-Ospina also appeals the district court's exclusion of expert testimony proffered by the defense that would have described the use by drug dealers of "blind mules" to transport narcotics across the country. At trial, Mr. Botero-Ospina acknowledged the presence of a large quantity of cocaine in his car, but claimed to be a "blind mule"--an unwitting individual who has been duped into driving a vehicle (usually borrowed or recently purchased) containing hidden contraband. To bolster his defense, Mr. Botero-Ospina proffered expert testimony that drug dealers commonly used "blind mules" to unknowingly transport narcotics across the country. The government filed a motion in limine seeking to exclude this expert testimony. The district court, in its discretion, granted this motion. Mr. Botero-Ospina appeals the district court's decision to exclude his proffered testimony.
 
 
 10
 Mr. Botero-Ospina's sole defense was his claim to have had no knowledge of the cocaine discovered in his minivan and to have been merely a dupe of the woman from whom he had purchased the van. His expert, he claims, would have buttressed this defense by testifying that California drug dealers commonly recruit unwitting innocents to transport drugs. Mr. Botero-Ospina argues this testimony was crucial to his defense:
 
 
 11
 It is only if the trier of fact is aware that drug dealers often use blind mules that Mr. Botero's story as to how he came into possession of the car makes any sense. Certainly to the average juror his story of meeting a woman ... who then offers to sell him a car, but first requires that he drive it across the United States to obtain the title, is bizarre. It is only when this story is told against the backdrop that this is exactly what drug dealers do that it makes any sense.
 
 
 12
 Appellant's Br. at 19.
 
 
 13
 We agree that Mr. Botero-Ospina's story, in the absence of supporting expert testimony, strains credulity. The fact that expert testimony would have strengthened his case does not, however, suffice to win this appeal for Mr. Botero-Ospina. "[T]he trial [court] has broad discretion in the matter of the admission or exclusion of expert evidence, and [its] action is to be sustained unless manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 35 (1962); see also SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1517 (10th Cir.1990) (rulings upon admissibility of expert testimony reviewed under abuse of discretion standard). Expert testimony is admissible if the "knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. We defer to the district court's evaluation of the probative value of the proffered testimony to the trier of fact. Compare United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986). We agree with the district court's determination that the probative value of that testimony was insufficient to warrant its admission in this case.
 
 
 14
 Mr. Botero-Ospina's knowledge, or lack thereof, of the cocaine hidden in his minivan was the essential element of the prosecution's case. The proffered expert testimony, however, would not have focused upon the mind of the typical "blind mule" (and hence, by reference, of Mr. Botero-Ospina), but rather would have educated the jury about the practices and mind-set of drug dealers. See Appellant's Br. at 20 ("People generally do not entrust their cars to strangers, especially if these strangers are going to drive across the United States. Common experience, however, does not include what drug traffickers do to escape detection and arrest.); see also id. at 18-19. Thus, the testimony, as proffered, would simply have informed the jury that drug dealers attempt to use dupes as couriers. It would have explained neither how "blind mules" are recruited nor why they agree to act in seemingly irrational ways. It therefore could have aided the jury neither in classifying Mr. Botero-Ospina as a "blind mule" nor in comprehending why he, as a putative "blind mule," agreed to such a bizarre purchase agreement. The testimony certainly would have done little to negate the essential knowledge element of the offense. Compare Dunn, 963 F.2d at 313-14 (battered woman's syndrome could negate requisite element of specific intent). In light of this failure (both at trial and in argument to this court) to focus the proffer with specific reference to the mental state either of Mr. Botero-Ospina or of the typical "blind mule," we cannot find the exclusion of the testimony to be an abuse of the broad discretion accorded the district court in evidentiary matters.
 
 
 15
 We AFFIRM the denial of Mr. Botero-Ospina's motion to suppress, the exclusion of the expert testimony pursuant to the government's motion in limine, and Mr. BoteroOspina's conviction.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Deputy Barney recorded the stop with a video camera. The video tape confirms the accuracy of the factual details found by the district court